[No. 5149.]

## SCANLON v. THE CITY OF DENVER.

1. **Cities and Towns—Ordinances—Title—Plurality of Subjects —Constitutional Law.**

   The provision of the Colorado constitution, which requires that the subject of an act shall be single and clearly expressed in its title, does not apply to city ordinances.—P. 403.

2. **Cities and Towns — Intoxicating Liquors — Licenses — Ordinances—Construction.**

   Section 1, ordinance 102, series of 1892, of the city of Denver, provided that no person or corporation within the city

limits should directly or indirectly sell or give away any intox-
icating or malt liquors to be drunk on the premises where sold
or given away without a license first obtained from the city.
Held, that such section was applicable to a bona fide restaurant
keeper who only sold liquor to customers in connection with
their meals, and that its enforcement by both fine and imprison-
ment was valid.—P. 404.

*Appeal from the County Court of Arapahoe County.*
*Hon. Albert S. Frost, Judge.*

M. W. Scanlon was convicted of violating a
liquor ordinance of the city of Denver, and he ap-
peals.                                 *Affirmed.*

Mr. S. S. ABBOTT, for appellant.

Mr. H. A. LINDSLEY and Mr. H. L. RITTER, for
appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of
the court:

From a judgment finding defendant guilty of a
violation of an ordinance of the city of Denver, he
appeals. The case was tried as a test case upon an
agreed statement of facts.

The prosecution was under section 1 of ordinance
102 of the series of 1892, whose title is: "An Ordi-
nance concerning the licensing and regulating of
dram shops and tippling houses." Section 1 reads:

"No person or corporation shall, within the cor-
porate limits of the city of Denver, directly or indi-
rectly, in person or by another, either as principal,
agent, clerk or servant, sell or give away any intoxi-
cating or malt liquors, whether the same be in bottles,
jugs, glasses or any other vessel or thing, to be drunk
upon the premises where sold or given away, or in
any adjacent room, building, yard, premises, or place
of public resort, or at any place whatsoever, without
a license first obtained according to the charter and
ordinances of the city of Denver."

Defendant is a genuine and *bona fide* restaurant keeper, and keeps a thoroughly reputable place. There is not attached to his place of business any bar of any kind, and he is not a dram-shop keeper or tippling-house keeper, unless the facts agreed upon make him such, as a matter of law. About one person in sixty who comes into his restaurant orders and pays for a bottle of beer or some other vinous or intoxicating liquors to be served with his meal, and which is drunk on the premises. On Sunday defendant furnishes a dinner at a fixed price, and included in the same is a small bottle of California or other wine. He never serves any kind of liquors except with meals to genuine and *bona fide* customers in his restaurant, and he has no other occupation.

There is no ordinance of the city of Denver which requires a license of a restaurant keeper, unless the ordinance in question does, and defendant has no license thereunder. It is defendant's contention that this section of the ordinance was not intended to include *bona fide* keepers of restaurants, as evidenced by the title, which relates solely to dram shops and tippling houses. He says that a restaurant is not a dram shop or tippling house. This, however, depends upon the character of the business that is carried on therein. That business may be so conducted in a restaurant as to constitute it a tippling house under the meaning of that term as defined in the authorities, is beyond doubt.

The provision in our constitution which requires that the subject of an act shall be single and clearly expressed in its title, does not apply to ordinances, and it has even been held that it is not essential to the validity of an ordinance that it have a title. Some courts have said that, in case of doubt or uncertainty in the language of the body of an ordinance, resort may be had to its title for the purpose

of arriving at its true meaning. But, in the language of the section before us there is no uncertainty. It provides that no person shall, within the limits of the city of Denver, sell or give away intoxicating or malt liquors "to be drunk upon the premises where sold or given away, or in any adjacent room    *    *    * or at any place whatsoever, without a license first obtained according to the charter and ordinances of the city of Denver."

Within its meaning, defendant is a "person," and his restaurant is a "place" within the city of Denver. Defendant has no license to sell or give away intoxicating or malt liquors for any purpose whatever. In the absence of the license provided for in this ordinance, a sale by him of liquors to be drunk in his restaurant, and which are drunk therein, is a violation of the ordinance, even though drunk in connection with a meal.

In *Chipman v. People,* 24 Colo. 520, it was decided that, under the legislation of this state, a legal license is an essential condition to the right of any one to sell liquor for any purpose, and in *Adams v. Cronin,* 29 Colo. 488, at page 495, it was again said that, "under the license laws of this state, no one may engage in the business of selling liquor without a license." And, at page 497, that "the selling of liquor is not a lawful calling in the city of Denver, unless a license is secured for it, and becomes such only when conducted as the license specifies."

The case most nearly in point which we have discovered, not found in briefs of counsel, is *Nicrosi v. State,* 52 Ala. 336, cited with approval by Black on Intoxicating Liquors, § 409. That was an indictment under a statute which made it an indictable offense for any "person who, not having first procured a license as a retailer from the proper legal authority, sells vinous or spirituous liquors of any kind    *    *    *

in any quantity, if the same is drunk on or about his premises." The defendants in that case "did sell vinous liquors, to be drunk, and which were drunk, on their premises; but they were so drunk only by persons taking meals at the time at the restaurant in Montgomery which defendants were licensed to keep." The argument there was the same as here, that such sale for such purpose was not a violation of the state statute. To this argument, the court, by Manning, J., replied:

"We are asked to make an exception in the statute law which the legislature did not make when it was framed and adopted. If we established such an exception, it would be equivalent to making an addition to the statute, of this effect: Provided, it shall be no offense for a licensed restaurant keeper to sell such liquors to his customers to be drunk while they are taking meals on his premises." And the court held that the statute there construed, which is much like the ordinance here, prohibited restaurant keepers from selling liquors to be drunk on their premises in connection with meals. In its opinion was pointed out the difficulty, if not impossibility, of abating the practice, which "would lead to the establishment of a great many restaurants, in which the liquors would be the chief article purchased and partaken, and the solid food a mere incident or pretense," were the statute to be construed as excepting the keeping of restaurants from its inhibition.

The same observation may be made with respect to the exception here insisted upon, although it is fair to say that, under the agreed statement of facts, defendant was guilty of no subterfuge, and in good faith was selling liquors to his patrons, to be consumed with their meals, believing that he had a right to do the same, and that it was not prohibited by this or any other ordinance of the city.

In reaching our conclusion, we are but giving effect to the plain and unambiguous language of the ordinance. If it works a hardship, or is too sweeping in its provisions, it is for the municipal authorities, and not for the court, to give relief. It is the duty of the courts to declare what has been enacted, and not what should have been.

Another point urged by defendant is, that the ordinance, providing, as it does, for both a fine and imprisonment, is void under the decision of this court in *McInerney v. City of Denver,* 17 Colo. 302. The decision there was made under the act of 1891, Session Laws 1891, 75, where the charter gave to the municipal authorities of Denver the power to enforce its ordinances "by a proper fine, imprisonment, or other penalties." An ordinance, passed in pursuance of that delegation of power, imposing both fine and imprisonment, was held invalid. At the next session of the general assembly there was a revision of the charter of the city of Denver, and, by section 22 of article 2 thereof (Session Laws 1893, 155) authority was given to the city to enact all ordinances necessary for carrying into execution the specific powers granted, "and to enforce the same by a proper fine, imprisonment and other penalties," thereby clearly authorizing an enforcement both by fine and imprisonment.

The judgment of the county court being in accordance with our conclusion, it is affirmed.

*·Affirmed.*

CHIEF JUSTICE GABBERT and MR. JUSTICE STEELE concur.