# Cooke, City Clerk *v.* Loper.

*Mandamus to Compel Issuance of Liquor License.*

(Decided May 16, 1907.   44 South. 78.)

1. *Intoxicating Liquors; Validity of Ordinance; Regulating.*—Under the power given the mayor and aldermen of Bessemer under the charter (Acts 1900-01, p. 444) an ordinance authorizing a committee of the council to refuse a liquor license if, in their opinion, the location of the saloon would disturb the public peace and good order and providing an appeal to the board of mayor and aldermen from the determination of the committee, is valid, and does not admit of opportunity for the exercise of arbitrary discrimination.

2. *Municipal Corporation; Ordinance; Construction.*—Where the charter of the town provides for the board of mayor and aldermen, but does not mention the word, "council," such word will be construed to mean the board of mayor and aldermen where its use in the ordinance obviously refers to the governing body of the city.

3. *Trial; Evidence; Rebuttal.*—It was competent for the city to show in rebuttal that the petitioner while holding a license had been tried and convicted before the mayor for selling liquor on Sunday, where the petitioner had introduced evidence tending to show that the municipal board was actuated by race prejudice in refusing the license to petitioner to sell liquor.

4. *Evidence; Proof of Conviction.*—Proof of the trial and conviction of one before the mayor of a city, should be made by the production of the original papers or the mayor's docket.

APPEAL from the Bessemer City Court.

Heard before Hon. WILLIAM JACKSON.

Petition for mandamus by J. B. Loper to compel C. T. Cooke, the clerk of the city court of Bessemer, to issue him a license for the sale of liquor by retail.   The city court awarded the rule nisi, and from this judgment this

appeal is prosecuted by defendant. Reversed and rendered.

B. G. PERRY, and ESTES, JONES & WELCH, for appellant.—The city of Bessemer has the authority to license, regulate and restrain the sale, giving away of spirituous liquors.—Acts 1900-01, p. 478; *Smith v. Warrior*, 99 Ala. 481. The state has the power to prohibit it as to a class that it deems unfit to engage in the business.— *Borck v. The State*, 39 So. 580. The state has the constitutional right to authorize any community or municipality absolutely to prohibit the sale of spirituous liquors.—*Ex parte Sykes*, 102 Ala. 173; Black on Intoxicating Liquors, §§ 107, 217, 228 and 234. Nor is the power given the city to license, regulate or restrain the sale of liquor in contravention of section 50, art. 4, of the Constitution.—*Ex parte Cowart*, 92 Ala. 225; *Armstead v. Crook*, 89 Ala. 235. The principles of discrimination do not apply.—23 Cyc. §§ 81-2 and 121, and authorities cited; *Muggler v. Kansas*, 123 U. S. 205. Mandamus will not lie in this case.—23 Cyc. 137; 13 Ency. P. & P. 493-6, 680-3, 697; *State v. Judge*, 15 Ala. 740; *State v. Wilson*, 26 South. 482; *State ex rel. Ducournean v. Langan*, 43 South. 187; *Taylor v. Cobb*, 13 South. 779; 57 Ala. 240.

PINKNEY SCOTT, and T. T. HUEY, for appellee.—The city having licensed the sale of liquor could not discriminate as to where it would be sold in the city or refer the same to a committee of council to determine the proper place and person.—*City of Montgomery v. West*, 42 South. 1000. There was no demurrer filed to the answer and it was for the court to determine whether or not the answer showed a sufficient excuse or reason for denying the writ of mandamus.—*Longshore v. The*

*State ex rel. Turner,* 137 Ala. 639. The ordinance was in direct conflict with the state law.—*Ex parte Theison,* 11 South. 901. The ordinance was unreasonable.—*Ex parte Whitwell,* 35 Am. St. Rep. 152.

DENSON, J.—This is a proceeding by mandamus to compel the respondent, as clerk of the city of Bessemer, to issue to the petitioner a license to retail vinous, spirituous, and malt liquors at No. 113 Twenty-First street, in said city. There are 28 grounds set down in the assignment of errors; but we think the discussion of only a few of these will bring us to an intelligent conclusion with respect to the vital issues in the cause, without the necessity of pursuing in detail its meanderings through the city court.

The charter of the city, approved December 13, 1900 (Acts 1900-01, p. 444), confers on the board of mayor and aldermen the power to license, regulate, and restrain the sale, giving away, or otherwise disposing of vinous, spirituous, malt, and other intoxicating liquors, bitters, and beverages within certain designated limits embraced in the territory of the city. The charter further provides that the board shall have the power to revoke and cancel any license issued for the sale of such liquors, when in the opinion of the board the public safety, peace, good order, or decency may require. It is settled law that, under a charter of this kind, a city may license, regulate or prohibit the sale of intoxicating liquors of all descriptions.—*Smith v. Town of Warrior,* 99 Ala. 481, 12 South. 418; *Ex parte Sikes,* 102 Ala. 173, 15 South. 522, 24 L. R. A. 774. The board of mayor and aldermen passed an ordinance fixing the amount to be paid for the privilege of retailing vinous, spirituous, and malt liquors at $600. By section 5 of the same ordinance it is provided that "before any license (liquor

[Cooke, City Clerk v. Loper.]

license) shall be issued to any person, firm or corpora-
tion, the person so desiring to take out such license shall
make his application to the committee heretofore au-
thorized by the city council of Bessemer and appointed
by the mayor, or to such other committee, general or
special, which the council may see fit to create for such
purpose, which application shall state the location, the
number of entrances, and from what streets or alleys,
and such other facts as the said committee may deem
reasonably necessary to be stated, and such license shall
not be issued unless the application is approved by said
committee. The said committee shall have power to in-
quire into the matter stated in the application and all
other matters concerning the propriety of issuing such
license, and if in their opinion the locating of a saloon
would disturb the public peace, or in any way interfere
with the police regulations and good order of the city,
or for any other good reason, they may refuse to grant
such application, and the applicant shall have the right
to appeal to the next regular meeting of the council."
The charter provides that "the government of the city
shall consist of and its corporate powers be exercised by
a mayor and ten aldermen." And we have seen that the
power to license is vested by charter in the board of
mayor and aldermen. However, we think the word
"council," as used in the ordinance, must be interpreted
as referring to and meaning the board of mayor and
aldermen; no such governing board as "council" being
mentioned in the charter, and it being obvious that the
word "council" refers to the governing board of the city.
Therefore we may read the ordinance as though the
words "board of mayor and aldermen" were used, in-
stead of "council."

This section of the ordinance is not mentioned in the
application for mandamus, but has been brought for-

[Cooke, City Clerk v. Loper.]

ward by the respondent in the answer to the rule nisi: and it is alleged in the answer that the application for the license was made by the petitioner under the ordinance, and that the committee refused the license, that the petitioner appealed to the council, and that the council sustained the action of the committee and refused the license. The ordinance is attacked by the petitioner on the theory that it reserves to the committee and the council the right to grant or withhold the license, as may suit their pleasure, and admits of the opportunity for the exercise of an arbitrary discrimination. The case of *City Council of Montgomery v. West*, 149 Ala. 311, 42 South. 1000, is relied on by the petitioner (appellee) to sustain his contention. In that case a city ordinance forbidding the operation of steam engines, planing mills, foundries, blacksmith shops, etc., was held invalid, on the theory contended for here by the petitioner. The court expressly states in the opinion, however, that the stationary engine (the thing there in question) is not of itself a nuisance, even if erected and used in the midst of a populous city. A careful reading of the opinion and of the cases cited therein will disclose that a distinction is made, in respect to the power of a city to pass ordinances regulating business between businesses which are legitimate in themselves, and in which any citizen may of common right engage, and that class of business in which no citizen may of common right engage. In other words, the business of retailing intoxicating liquors is not in the category with businesses not vicious within themselves, when it comes to the exercise of the police power with respect to it. No person has or enjoys a vested right to have a liquor license. As well said by Justice Field, in the case of *Crowley v. Christensen*, 137 U. S. 86, 11 Sup. Ct. 13, 34 L. Ed. 620: "Not only may a license be exacted from the keeper of the saloon before

[Cooke, City Clerk v. Loper.]

a glass of his liquors may be disposed of, but restrictions may be imposed as to the class of persons to whom they may be sold, and the hours of the day and the days of the week on which the saloons may be opened. Their sale may be absolutely prohibited. It is a question of public expediency and public morality. The police power of the state is fully competent to regulate the business—to mitigate its evils or to suppress it entirely. There is no inherent right in a citizen to sell intoxicating liquors at retail. It is not a privilege of a citizen of the state or of the United States. As it is a business attended with danger to the community, it may, as already said, be entirely prohibited, or be permitted under such regulations as will limit to the utmost its evils." See, also, *Wyomings v. Cheyenne*, 40 L. R. A. 710, 7 Wyo. 417, 52 Pac. 975; *Mugler v. Kansas*, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205. And it is uniformly held by the decisions of the Supreme Court of the United States that laws prohibiting or regulating the sale of intoxicating liquors invade no constitutional privilege guaranteed to the citizen.

It cannot be predicated of the ordinance that all persons who may desire a license may not come, or do not come, under its provisions. It does not purport on its face to apply to only a class of individuals. Indeed, by its terms, all who may desire a license shall, before obtaining it, comply with the terms of the ordinance. But that it retains in the committee and the board a discretion in respect to the granting of the license cannot be gainsaid. It must be conceded that by the charter the Legislature conferred on the city the power to enact ordinances regulating the subject of intoxicating liquors, the granting of license to deal in them, etc., to the same extent as the Legislature could have done by a direct and comprehensive statute. And we think a reasonable

doubt cannot arise as to the authority of the Legislature to vest in the governing board of the city a certain discretion in this respect, and that such legislation would not be violative of section 89 of article 4 of the Constitution.—*Ex parte Cowert*, 92 Ala. 94, 101, 9 South. 225; Black, Intoxicating Liquors, § 217; 1 Dill. Mun. Corp. (4th Ed.) § 308. The power to regulate carries with it the exercise of discretion—necessarily so. And under the charter power the city, after granting the license to retail liquors, may, when in the opinion of the board the public safety, peace, good order, or decency may require it, revoke and cancel such license; so it would seem that the Legislature intended to confer full and ample power on the municipality to protect its citizens against the evils of intoxicating liquors—even including discretionary power as to the granting and revoking of licenses. In the case of *Crowley v. Christensen, supra,* in respect to this point, the court said: "The manner and extent of regulation rest in the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue license for that purpose. It is a matter of legislative will only. As in many other cases, the officers may not always exercise the power conferred on them with wisdom or justice to the parties affected."

To make the point clear, it may be well to state the substance of the ordinance that was in judgment in that case. It provided that "no license as such liquor dealer shall be issued by the collector of licenses, unless the person desiring the same shall have obtained the written consent of a majority of the board of police commissioners of the city and county of San Francisco to carry on or conduct said business; but, in case of refusal of such consent, upon application, said board of police com-

missioners shall grant the same upon the written recommendation of not less than twelve citizens of San Francisco owning real estate in the block or square in which said business of retail liquor dealer  *  *  *  is to be carried on." The ordinance was attacked upon the same ground as is the one here. The trial court, in holding the ordinance invalid, cited and relied on the case of *Yick Wo. v. Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220. The same is cited and followed in the case of *City Council of Montgomery v. West, supra.* Justice Field, in his opinion, distinguishes the two cases in the following language: "It will thus be seen that the case (*Yick Wo. v. Hopkins*) was essentially different from the one now under consideration; the ordinance there held invalid vesting uncontrolled discretion in the board of supervisors with refernce to a business harmless in itself and useful to the community (the establishing of a laundry), and the discretion appearing to have been exercised for the express purpose of depriving the petitioner of a privilege that was extended to others. In the present case the business is not one that any person is permitted to carry on without a license, but one that may be entirely prohibited or subjected to such restrictions as the governing authorities of the city may prescribe." It appears to us that the case at bar differentiates from the *West Case* in the same way and degree in which the cases of *Yick Wo. v. Hopkins* and *Crowley v. Christensen* were differentiated.

A case which has denied the power of a municipality to refuse a liquor license to one who has complied with the procedure and conditions prescribed by law, and which is relied on by the petitioner (appellee), is *Ex parte Theisen,* 30 Fla. 529, 11 South. 901, 32 Am. St. Rep. 36. That case is easily distinguishable from *Crowley v. Christensen* and its congeners. The Florida court

referred to those cases, and, as a feature which distinguishes them from *Ex parte Teisen,* mentioned the fact that the statutes of the state contained specific regulations relating to the sale of liquors and the issuance of municipal licenses therefor; and the court said: "Our decision in the case at bar rests on the conclusion that the grant to municipal corporations to regulate and restrain will not permit the enactment of an ordinance under which arbitrary discrimination may be made in respect to matters which are exclusively under statutory control and regulation. In the absence of an express declaration of intention to that effect, it must not be assumed that the Legislature proposed, by the grant of power to municipal corporations to regulate and restrain retail liquor dealing, to confer upon them the power to contravene and defeat state policy by ordinances inconsistent with the laws of the state on the subject." In that case there was no special grant of power to the municipality on the subject, but the only power it possessed came from the general laws of the state in respect to it. In the case at bar the general law concerning state and county licenses to sell liquor does not affect the power which has been conferred upon the city of Bessemer in respect to the subject; but the state and county licenses must be had, in addition to the city license, to lawfully sell liquor within the limits of the city.

In respect to the ordinance in judgment, while the discretion is reposed in a committee in the first instance, yet the finding of the committee is not final. The rights of the applicant for license are safeguarded against the exercise of discretion arbitrarily by the right of appeal to the next regular meeting of the city council; the final result being that applications are passed on by the board of mayor and aldermen, the governing board of the city.

And our record here shows that this was the course which was taken by the applicant in the instant case, and that the board refused to grant the license. Thus we get away from the committee feature in the ordinance, and see that the petitioner's supposed grievance is determinable with respect to the action of the board of mayor and aldermen. It is our opinion that the discretion confided by the ordinance in the board of mayor and aldermen is within the power conferred upon the city in respect to the regulation of the sale, or the licensing of the sale, of intoxicating liquors, and cannot be assailed. It may be that the action of the board, under the ordinance, if characterized by mere caprice or by race prejudice, could be assailed.—*Crowley v. Christensen, supra; Tragesser v. Gray,* 73 Md. 250, 20 Atl. 905, 9 L. R. A. 780, 25 Am. St. Rep. 587; *Perkins v. Ledbetter,* 68 Miss. 327, 8 South. 507; *Perry v. Salt Lake City,* 7 Utah, 143, 25 Pac. 739, 998, 11 L. R. A. 446; *State v. City of Cheyenne,* 40 L. R. A. 710, 7 Wyo. 417, 52 Pac. 975.

The petitioner, on the trial, attempted to show that the board in refusing his application for license, was actuated by race prejudice; but we are of the opinion, and so hold, that the effort was a failure. Evidence on this point having been admitted, it was competent for the respondent to rebut it with proof that the petitioner, during the last year and while holding a license to retail liquors in the city, was tried and convicted before the mayor for selling liquors on Sunday. But this should have been done by producing the original papers or the mayor's docket.—*Thompson's Case,* 100 Ala. 70, 14 South. 878. It follows that the petitioner failed to show a clear legal right to have the clerk issue him a license, and the city court erred in rendering judgment for the petitioner, and should have rendered judgment for the respondent.

In this discussion we have not touched upon the irregularities is procedure, but it must not be understood by this course that the procedure is what it should be. The petition is imperfect, and there is a variance between the rule nisi and the petition as to parties; and it is at least doubtful that the clerk is a proper party. Let the judgment of the city court be reversed, and a judgment be here rendered quashing the rule nisi and dismissing the petition, at the cost of the appellee in the city court and in this court.

Reversed and rendered.

TYSON, C. J., and HARALSON and SIMPSON, JJ., concur.